United States District Court
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                        SAN FRANCISCO DIVISION

9

10

11

12    YVONNE HODGE,                            No. C 09-04719 RS

13              Plaintiff,                     **ORDER GRANTING DEFENDANTS'**
          v.                                   **MOTIONS FOR SUMMARY**
14                                             **JUDGMENT AND DENYING**
                                               **PLAINTIFF'S MOTION FOR**
15    OAKLAND UNIFIED SCHOOL                    **PARTIAL SUMMARY JUDGMENT**
      DISTRICT, et al.,
16
                Defendants.
17    _____/

18                          I. INTRODUCTION

19         In this employment discrimination suit, plaintiff Yvonne Hodge alleges the Oakland Unified

20    School District (OUSD) and three of its former employees, Kimberly Noble, Lisa Cole, and Iris

21    Wesselmann, engaged in race and age discrimination, as well as illegal retaliation.  She moves for

22    partial summary judgment on several affirmative defenses raised by defendants.[1]  Defendants also

23    move for summary judgment on all of Hodge's claims.  This matter is appropriate for disposition

24    without a hearing pursuant to Civil Local Rule 7-1(b), and for all the reasons stated below,

25

26    _____

27    [1] Plaintiff also filed an *ex parte* application to submit an exhibit weeks after her opposition and any
      objections to the evidence were due.  As Civil Local Rule 7-10 explains, a party may approach the
28    Court on an *ex parte* basis only if authorized to so by "a statute, Federal Rule, local rule or Standing
      Order."  That authority must be identified in the moving papers.  Here, plaintiff has invoked no such
      provision of law.  Accordingly, the motion is denied.

                                                            No. C 09-04719 RS
                                                            ORDER

1  defendants' motion for summary judgment is granted, and plaintiff's motion for partial summary

2  judgment is denied as moot.

3                                    II. BACKGROUND

4          As best as can be discerned from plaintiff's filings in this case, the instant litigation arises

5  primarily out of OUSD's hiring for the summertime "extended school year" (ESY).  By way of

6  background, the provision of such ESY programs to certain students with disabilities, as a

7  supplement to the normal academic school year, is required by the federal Individuals with

8  Disabilities Act, 20 U.S.C. § 1400, *et. seq.*, and the California Education Code, 5 Cal. Code Reg. §

9  3043.  OUSD's ESY program is not limited to students who are "severely handicapped" (SH), but

10  the district has offered evidence that the great majority of students in the program qualify as SH.

11  According to the evidence, the district places most "non-severely handicapped" (NSH) students in

12  non-public schools or agencies for ESY, and less often, within the district's ESY program, in

13  "mixed" classrooms that include SH and NSH students.  Finding teachers that meet the credential

14  requirements for ESY is challenging for many districts, including OUSD, as there is a general

15  shortage of such instructors.  Ordinarily, teachers of mixed classrooms must be appropriately

16  credentialed to teach both SH and NSH students.  When there is a shortage of teachers with

17  appropriate SH credentials, however, a district may hire a substitute teacher for a limited period of

18  days, or a teacher who holds NSH credentials, provided he or she also holds a special permit.

19          In 2008, Hodge, who is African-American and over the age of 55, was employed by OUSD

20  to teach a class of autistic children during the summer ESY term.  The parties agree that she holds

21  (1) a credential which allows her to teach non-disabled elementary school students; (2) a credential

22  which permits her to teach NSH students; and (3) a credential which allows her to provide limited,

23  special instruction to students who spend a majority of their school day in regular classrooms.  In

24  other words, Hodge is unquestionably certified to teach NSH students, but not SH students.  She

25  does not hold the Special Education Limited Term Assignment Permit required for NSH-

26  credentialed teachers to teach SH students during ESY on an emergency basis.  Apparently for the

27  first time, in an attempt to prove her qualifications for ESY, Hodge now suggests she was listed as a

28

substitute teacher within the district.[2]  Defendants insist that suggestion is a misrepresentation, as Hodge was, during the relevant time period, included on the district's substitute list for *adult* education only.  Notably, plaintiff has not offered a sworn statement asserting that she is an elementary school substitute.  A termination letter Hodge filed supports the district's view, as does the other evidence Hodge has submitted.[3]  Consequently, the only admissible evidence shows that she was not a qualifying substitute.

According to defendants, beginning in 2009, OUSD took steps to reform its credentialing process in an attempt to avoid "mis-assignments," e.g., placement of unqualified instructors.  Hodge asserts that the resulting hiring process did not comply with OUSD's own policy of disseminating available jobs.  The district confirms that the process was designed to reduce mis-assignments, and therefore was open to select applicants only.  Exh. 10 to Pl.'s Opp'n at 1 (letter from OUSD's general counsel to plaintiff stating, "[t]his year ESY positions were not posted and thus no applications were processed").  OUSD avers, with evidentiary support, that it first invited regular academic teachers of ESY-qualifying students, as well as teachers already assigned to special education classrooms during the regular academic year, to teach during the summer ESY program.  For the few remaining positions, the district then solicited teachers with SH credentials that were not already so engaged.  Finally, OUSD claims to have filled any additional positions with substitute teachers.

---

[2] The SAC makes no reference to this purported fact, and the issue did not arise in earlier motion practice.
[3] The letter reads: "Adult and Career Education Program is no longer in need of your services and that your current temporary adult education substitute assignment ended effective August 2, 2010." Exh. 8 to Pl.'s Opp'n at 1. OUSD insists that a portion of an undated substitute list also filed by Hodge (which includes her name) is the adult education substitute list.  An undated email from an employee of OUSD's Adult & Career Education program, which is attached to the list as part of the same exhibit and makes express reference to it, appears to confirm that conclusion, as does OUSD's own evidence.  Exh. 17 to Pl.'s Opp'n at 1; Silva Decl. in Supp. of Defs.' Reply ¶ 2 (declaration from OUSD human resources personnel stating "I looked up the District's active substitutes during the 2009-2010 and 2010-2011 school year" and "Yvonne Hodge was not listed"); Exh 1 to Defs.' Reply (relevant portions of OUSD's active substitute list for 2009-2011 do not list Hodge's name).  For what it is worth, the list is not attached to a declaration, and does not appear to be authenticated, or supported by a foundation, and thus is inadmissible in any event.  Finally, although plaintiff suggests that defendant Wesselman admitted in deposition Hodge was on the district's substitute list, that is not an accurate characterization of her testimony.  In fact, Wesselman merely stated that she saw Hodge's name on a list that included all personnel in the special education program, including custodians and other non-academic staff.  Wesselman Depo. at 52:25-54:4.

United States District Court

For the Northern District of California

1    According to Hodge's deposition testimony, in advance of the 2009 ESY program, she

2  called the district to inquire about applying for a teaching position and was told by the clerk that the

3  special education program was not accepting applications from candidates without a SH credential.

4  Hodge did not identify herself during the conversation, but admitted that she lacked a SH credential,

5  and the call then ended.  Hodge placed a second call to OUSD's human resources department, but

6  that office simply referred her back to the special education department, which she had called

7  previously.  Hodge testified that she did not fill out any paperwork to apply for the 2009 ESY

8  program and, other than calling, does not remember taking any other steps to apply.[4]  Hodge Depo.

9  at 234:3-18.  Similarly, she did not formally submit an application in 2010 or 2011.  Pl.'s Opp'n at

10  15.

11    Hodge maintains that the district did not hire her, and instead solicited, and later hired, other

12  equally or less highly credentialed teachers to teach during the 2009 and 2010 ESY terms.

13  Specifically, she contends defendants refused to process her ESY application, informed her that only

14  teachers with SH credentials were welcome to apply, and instead handpicked teachers with NSH

15  credentials equivalent to hers in a discriminatory fashion.  OUSD denies it affirmatively rejected

16  applications, but does not otherwise dispute plaintiff's account.  A roster of teachers hired for the

17  2009 ESY term submitted as evidence by plaintiff indicates that of the approximately 77 individuals

18  the district ultimately hired, 14 possessed non-disabled credentials or NSH credentials like those

19  possessed by plaintiff.  Of those 14, six were African American, and four were over 40 years of age,

20  including one 61 year old African American holding a NSH-equivalent credential.  Exh. 3 to Pl.'s

21  Opp'n.

22    Hodge also alleges that she was the target of a widespread pattern of harassment beginning

23  in February of 1999 and continuing through 2010.  For example, she avers that in 1999 to 2002, on

24  several occasions she advocated for students' and parents' rights.  Hodge Decl. ¶¶ 3, 6.  She also

25  alleges that in 2005,[5] she told the principal of Castlemont High School, where she was then

26  _____

27  [4] Although Hodge's opposition brief asserts that "she turned in an application anyway," which
application "was rejected and is absent from her personnel files," that suggestion contradicts her
deposition testimony, and in any case, is not supported by any evidence.  Pl.'s Opp'n at 13.

28  [5] As elsewhere in her filings, plaintiff's statements in the record are actually inconsistent: in her
declaration, Hodge states this event occurred in 2005, whereas in discovery she informed defendants

working, not to carry a disabled student in a wheelchair up and down the school's stairs because doing so violated the child's rights under the ADA.  According to Hodge's testimony, she was relieved of her duties at Castlemont within the month.  Hodge Decl. ¶¶ 13-14.  In her opposition brief, Hodge also alleges that in 2007, she "recommended a charter school student be placed in a SDC class.  Such a placement costs the district and causes backlash."  Pl.'s Opp'n at 17.  Her papers, however, do not provide any additional description of this alleged incident or supporting citations to the record.   Hodge also alleges that in 2009, she provided an "assessment plan to a parent who had been seeking assessments for months and months," Pl.'s Opp'n at 17, and as a result, an administrator in OUSD's special education program stated in an email, "[s]he should be written up," ostensibly for circumventing the established procedure for responding to such requests.  Exh. 16 to Pl.'s Opp'n at 1.  There is no evidence, however, to suggest that she was ever "written up."  Although the record is replete with passing references to, and disorganized allegations of, other events from this approximate time period, there is insufficient detail and evidence to reveal the significance of most of these averments.[6]

Finally, Hodge alleges the individual defendants harassed her during the 2008 ESY term.  Her complaint alleges she was assigned to a class of autistic children, despite her inexperience with such students, as part of "a scheme to produce an unflattering evaluation" of her work.  SAC ¶ 14.  According to Hodge, defendants Wesselman and Noble, who served as the special education director and the principal of the school at which Hodge taught, allegedly interfered with the work of

---

it occurred in "May or June of 2006."  Exh. G (Resp. to Wesselman's Req. for Interog. at 13:5-8) to Def.'s Mot.

[6] For example, in 2005, Hodge allegedly requested to participate in a training conducted on a "test instrument used by resource teachers," but was refused.  *Id.* at ¶ 19.  The record reveals nothing further as to this event.  Relying on a declaration she submitted in opposition, Hodge also generally argues she has been "treated as an outcast … and denied training, excluded from special education staff meetings, inservices, buyback days, denied testing kits necessary to test her students, denied instructional materials …," etc.  Pl.'s Opp'n at 17.  Hodge's declaration, however, does not provide additional detail, although elsewhere she has adduced some minimal evidence that her ESY classroom lacked age-appropriate materials.  Hodge Decl. ¶ 17-18 (I show up and [sic] trainings and am not given materials to train on.  I am denied the basic materials I need to perform my job.");  Noble Depo. at 101:1-4 (admitting no classroom materials).  Hodge also alleges that in 2007, she met with the director of special education, who appeared to be concerned with her performance.  Hodge Decl. ¶¶ 25-28.  Around the same time, Hodge was allegedly told by another employee that the director was having her followed.  *Id.* at ¶ 25.  Her opposition brief omits any reference to these purported events.

**United States District Court**
For the Northern District of California

her classroom aids. According to plaintiff, Wesselman directed the aids not to assist students in using the toilet and instead required Hodge to do that work, although it did not fall within her usual job responsibilities.[7] Relatedly, she also alleges she was not permitted to participate in the evaluation of her aids, although she fails to identify any evidence to substantiate this allegation, other than the district's policy concerning evaluations. Hodge further asserts that she was prevented from taking her students outside during ESY, although defendants insist that she was required to return inside with her class on only one instance.[8] Her opposition papers raise additional allegations concerning the assignment of a teaching fellow to her, as well as a supposed reduction in her compensation, and an unsatisfactory review she received from her superiors. They do not, however, provide any evidentiary support for these allegations. *See* Pl.'s Opp'n at 22-23.

Hodge's second amended complaint (SAC) advances claims for relief for violations of: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 623; (2) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, and Section 503 of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*; and (3) plaintiff's First Amendment rights under 42 U.S.C. § 1983. Her complaint also asserts a standalone claim for injunctive and declaratory relief.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also Celotex*, 477 U.S. at 323. A genuine issue

---

[7] Defendants offer evidence suggesting a very different account of events. According to them, Hodge's aids approached Noble to complain of plaintiff's lack of leadership in the classroom, failure to instruct, assist with toileting, or oversee breaks. Noble Depo. at 46:22-47:12; 49:13-24; Cole Decl. ¶ 2.

[8] Defendants present evidence to suggest that Hodge was actually only ordered to bring her students back inside on one occasion because they were playing during instructional time. Noble Depo. at 59:4-20. Hodge confirmed in deposition testimony this was the case. Hodge Depo. at 415:10-15.

No. C 09-04719 RS
ORDER

1    of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which

2    could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3    The Court must view the evidence in the light most favorable to the nonmoving party and draw all

4    justifiable inferences in its favor. *Id.* at 255.

5                                  IV. DISCUSSION

6    A. Civil Rights Act and ADEA

7           Hodge's first claim for relief alleges OUSD engaged in illegal race and age discrimination

8    and retaliation, in violation of Title VII of the Civil Right Act of 1964 and the ADEA, respectively.

9    Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual,

10   or otherwise to discriminate against any individual with respect to his compensation, terms,

11   conditions, or privileges of employment," or "to limit, segregate, or classify his employees or

12   applicants for employment in any way which would deprive or tend to deprive any individual of

13   employment opportunities or otherwise adversely affect his status as an employee, because of such

14   individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The ADEA

15   prohibits employment discrimination, similarly defined, "because of [an] individual's age," 29

16   U.S.C. § 623(a)(1), with protection "limited to individuals who are at least 40 years of age." 29

17   U.S.C. § 631(a).

18          1. Failure to hire

19          The Ninth Circuit employs the *McDonnell Douglas* framework to evaluate motions for

20   summary judgment under Title VII and the ADEA. *Shelley v. Geren*, 666 F.3d 599, 607-08 (9th

21   Cir. 2012). To survive summary judgment, it first falls to Hodge to establish a *prima facie* case of

22   discrimination by showing: (1) she is a member of a protected class or at least forty years old; (2)

23   she was qualified for the position; (3) she suffered an adverse employment action; and (4) that

24   persons outside her protected class or younger than her, with equal or lesser qualifications, were

25   given more favorable treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973);

26   *Shelley*, 666 F.3d at 608-09. If she succeeds, the burden of production shifts to OUSD "to articulate

27   some legitimate, nondiscriminatory reason for the challenged action." *Hawn v. Exec. Jet Mgmt.,*

28   *Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010) (citing *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225

United States District Court

For the Northern District of California

1    F.3d 1115, 1123-24 (9th Cir. 2000)).  If OUSD shoulders this burden, plaintiff must then raise a

2    triable issue of material fact as to whether the district's proffered reasons for their terminations are

3    mere pretext for unlawful discrimination.  *Id.* (citing *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th

4    Cir. 2000)).  "Circumstantial evidence of pretext must be specific and substantial in order to survive

5    summary judgment."  *Bergene v. Salt River Project Agr. Imp. And Power Dist.*, 272 F.3d 1136,

6    1142 (9th Cir. 2001) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)).

7            By virtue of the fact that Hodge is African American and over the age of forty, there is no

8    question she is afforded protection under Title VII and the ADEA.  The second element of the *prima*

9    *facie* case requires a showing that plaintiff was qualified and applied for the job.  OUSD points to

10   Hodge's credentials as proof that she was not in fact qualified.  Hodge replies she was qualified to

11   teach NSH students.  There is no dispute as to the material facts.  Hodge was properly credentialed

12   to teach NSH, but not SH, students.  The record also reflects, and OUSD does not dispute, that at

13   least fourteen instructors holding credentials equivalent or lesser to Hodge's were hired for ESY in

14   2009.  It is of no consequence that neither Hodge, nor the individuals ultimately hired, possessed the

15   credentials ordinarily required by state law.  As *McDonnell Douglas* makes clear, for purposes of

16   analyzing Hodge's employment discrimination claims, the relevant question is whether "the

17   employer continued to seek applicants from persons of *complainant's qualifications*."  411 U.S. at

18   802 (emphasis added).  Here, the district did eventually seek instructors with Hodge's qualifications,

19   and it follows that, at least in this very limited sense, Hodge was qualified for the job.

20           To the extent OUSD argues Hodge did not meaningfully apply for the position, that

21   contention is also unpersuasive.  In 2009, uncontested evidence shows she called the special

22   education office within the district and inquired about the job, but was informed that she did not

23   possess the requisite credentials.  Failure to submit a formal job application "does not inevitably and

24   forever foreclose entitlement to … relief under Title VII."  *Int'l Brotherhood of Teamsters v. United*

25   *States*, 431 U.S. 324, 367 (1977).  *Accord Alaniz v. Cal. Processors, Inc.*, 785 F.2d 1412, 1417 (9th

26   Cir. 1986).  That is because a non-applicant "is necessarily claiming that he [or she] was deterred

27   from applying for the job by the employer's discriminatory practices."  431 U.S. at 367-68.  The

28   same logic applies with equal force to Hodge's Title VII and ADEA claims.  Hodge's theory is that

United States District Court
For the Northern District of California

1   the district refused to accept applications from candidates like her in order to solicit, in a

2   discriminatory fashion, particular individuals for the available positions.  Because she actually

3   inquired about employment but was told she lacked the required credentials, she need not have gone

4   through the motions of formally submitting an application, only to be rejected, in order to file suit.

5           The district alternatively contends that it could not have discriminated against Hodge

6   because she did not identify herself at the time she inquired.  On a related note, OUSD also

7   maintains that its supposed policy of only accepting applications from legally qualified teachers was

8   applied to all potential candidates.  Both arguments fall short.  Again, plaintiff's theory is that the

9   district dissuaded her, like other equally credentialed candidates, from applying, so that the

10  individual defendants could apply their own discriminatory criteria in teacher selection.  It is of no

11  moment that the district initially discouraged all unaccredited candidates.  What is significant,

12  rather, is the undisputed fact that OUSD selectively solicited and hired some such candidates with

13  equivalent credentials.

14          Failure to hire is undoubtedly an adverse employment action, *McDonnell Douglas*, 411 U.S.

15  at 802, and thus the only remaining issue with respect to Hodge's *prima facie* case is whether or not

16  other, younger or non-African American individuals, with like credentials, received favorable

17  treatment.  Here, the record reflects that OUSD did hire both younger and non-African American

18  employees that held the same credentials as Hodge.  Specifically, of the 14 instructors who were

19  hired with equivalent credentials, six were African American, eight were not, and 11 were under the

20  age of forty (eight were in their twenties) whereas two were older than sixty.  OUSD argues that this

21  apparent diversity is actually evidence of nondiscrimination.  The Supreme Court and Ninth Circuit

22  have plainly rejected that position, however.  "Title VII is offended when an *individual* suffers

23  discrimination with respect to a particular adverse employment decision, even if others of the same

24  protected group are not similarly disadvantaged."  *Breiner v. Nev. Dep't of Corrections*, 610 F.3d

25  1202, 1208 (9th Cir. 2010) (emphasis in original).  *See also Furnco Constr. Corp. v. Waters*, 438

26  U.S. 567, 579 (1978) ("A racially balanced work force cannot immunize an employer from liability

27  for specific acts of discrimination.").  The same is true of the ADEA.  *Reeves v. Sanderson*

28  *Plumbing Prods.*, 530 U.S. 133, 153 (2000) (existence of similarly situated employees over age 50

No. C 09-04719 RS
ORDER

United States District Court

For the Northern District of California

1  was "relevant, [but] certainly not dispositive" of the employer's lack of intent to discriminate

2  against the plaintiff on the basis of age).  As a result, plaintiff has stated a *prima facie* case of

3  discrimination under both Title VII and the ADEA.

4  The burden thus shifts to the school district to articulate some legitimate, nondiscriminatory

5  reason for rebuffing plaintiff's inquiry about 2009 ESY applications.  OUSD has satisfied its burden

6  in this respect.  It avers it declined to accept applications from all candidates lacking SH credentials,

7  regardless of race or age, in an attempt to correct its prior practice of employing unqualified

8  candidates, and for purposes of "efficiency."  As the record reflects, there was a shortage of properly

9  certificated teachers for ESY programs, and OUSD has, in the past, resorted to employing

10  unaccredited staff.  To avoid doing so again, the district decided to solicit qualified staff directly,

11  and in this manner, filled the great majority of the positions.  It then approached under qualified

12  teachers to fill the remaining spots.  The district maintains that it would have been administratively

13  inefficient to request and accept applications from unqualified teachers.  To the extent Hodge doubts

14  this position, or characterizes it as mere pretext, her arguments are properly directed to showing the

15  existence of a triable issue under the next step of *McDonnell Douglas*' analysis.  *Hawn*, 615 F.3d at

16  1155 (under *McDonnell*'s second step, the burden of production, but not the ultimate burden of

17  persuasion, shifts to employer).

18  Ultimately, Hodge has failed to identify sufficient evidence to support a triable issue of

19  material fact.  *Bergene*, 272 F.3d at 1142.  She advances several arguments.  First, she attacks the

20  district's failure to post the ESY jobs.  Invoking cases from other Circuits, she urges that an

21  employer's violation of its own hiring procedure is evidence of pretext, particularly if the adopted

22  protocol is subjective by nature.  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1220 (10th

23  Cir. 2002); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir. 1997).  While that may be

24  true as a general matter, the cases Hodge relies upon are easily distinguished from present

25  circumstances.  In *Garrett*, the Tenth Circuit reaffirmed that "'disturbing procedural irregularities'

26  can satisfy the requirements of a pretext claim."  305 F.3d at 1210 (citing *Mohammed v. Callaway*,

27  698 F.2d 395, 401 (10th Cir. 1983)).  *Stern* similarly stands for the proposition that departures from

28  established procedures "can raise a question as to the good faith of the process where the departure

United States District Court

For the Northern District of California

may reasonably affect the decision."  131 F.3d at 313 (quoting *Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2d Cir. 1984).  Here, the school district maintains that it implemented the revised hiring practice in an effort to correct its own, undisputed failure to comply with state law.  That cannot be regarded as a troubling departure from a preexisting policy or an indication of bad faith.  At most, the district executed poorly its attempt to further an important and worthy objective.  Furthermore, while OUSD's ultimate selection of under qualified candidates appears to have been somewhat subjective, there is indication in the record that subjectivity was employed to advance discriminatory objectives.[9]  Hodge also questions the district's decision to limit consideration to teachers with SH credentials, given that those teachers were not technically qualified to teach NSH students.[10]  She fails to acknowledge, however, the evidence adduced by the district that the great majority of the students in the program required instructors with SH credentials, and that the few NSH students in the program were mixed in with SH students.  The record therefore supports the district's contention that it primarily needed teachers with SH or SH *and* NSH credentials – not teachers with only NSH credentials.

Perhaps more to the point, whatever the irregularity of OUSD's hiring procedure due to the difficulties of finding qualified ESY instructors, Hodge has failed to produce any significant direct or circumstantial evidence of discrimination.  There is certainly no suggestion of any overtly racist or ageist remarks or conduct by any of the defendants.  As for circumstantial evidence, of the more than 70 teachers hired for ESY in 2009, 18 were African American, half were over 40 years of age, and 13 were over the age of 60.  The overall hiring numbers are nearly identical for 2010.  Among the dozen or so individuals who were hired in 2009, with credentials equivalent to Hodge's, six were African American, and four were over the age of forty.  Plaintiff's suggestion that the district's hiring procedure was therefore a pretext for age or race discrimination simply lacks evidentiary support.  Pl.'s Opp'n at 12 ("the demographics shows [sic] that non-severely handicapped teachers

---

[9] Defendants understandably emphasize that there is no evidence the district was even aware of Hodge's interest in the position.

[10] She also suggests that it was discriminatory of the district to fail to mention to her that substitute teachers might qualify for the position.  Because there is no admissible evidence Hodge was on the district's list of elementary substitutes, however, that argument need not be addressed.

United States District Court
For the Northern District of California

1   [sic] were assigned to ESY, if they were young – under 40 [–] or if they were white").  Without

2   more, Hodge does not have a triable failure-to-hire case to present to the jury.

3         Although Hodge also raises, as a fallback, an allegation of disparate impact, to establish that

4   theory, she must show a significant disparate impact on a protected class caused by a specific,

5   identified, selection process.  *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990).  A

6   *prima facie* case is "usually accomplished by statistical evidence showing 'that an employment

7   practice selects members of a protected class in a proportion smaller than their percentage in the

8   pool of actual applicants.'"  *Robinson v. Adams,* 847 F.2d 1315, 1318 (9th Cir. 1987) (citing *Moore*

9   *v. Hughes Helicopters, Inc.*, 708 F.2d 475, 485 (9th Cir. 1983)).  There is no evidence in the record

10  to show the size or constitution of the pool of teachers who might have been hired by the district for

11  ESY, and as a consequence, Hodge cannot demonstrate any alleged disparate impact, or, for that

12  matter, causation.  To the extent plaintiff's claim rests on the district's failure to hire her, summary

13  judgment must be granted to defendants.

14        2. Retaliation

15         To the extent Hodge asserts a retaliation claim under Title VII or the ADEA, she must show

16  (1) she engaged in protected activity; (2) she was thereafter subjected to an adverse employment

17  action; and (3) a causal link between the protected activity and the adverse employment action.  *Ray*

18  *v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *Hashimoto v. Dalton*, 118 F.3d 671, 675 n.1

19  (9th Cir. 1997) ("[T]he ADEA anti-retaliation provision is parallel to the anti-retaliation provision

20  contained in Title VII, ... cases interpreting the latter provision are frequently relied upon in

21  interpreting the former" (citations and internal quotation marks omitted)).  Here, she has not

22  advanced a discernible claim, let alone adduced evidence in support of one.  Even at this advanced

23  stage of litigation, it remains fatally unclear from Hodge's filings whether she even intends to

24  advance a retaliation claim under Title VII or the ADEA, let alone what facts might support

25  recovery.  For example, among other things, it is not evident what conduct Hodge submits was

26  protected activity.  Consequently, defendants must be granted summary judgment on this claim as

27  well.

28  B. Rehabilitation Act and ADA

No. C 09-04719 RS
ORDER

United States District Court

For the Northern District of California

1    As defendants note, it is difficult to discern the legal basis for plaintiff's third claim for

2    relief.  She appears to assert claims under Title VI of the Civil Rights Act of 1964, *see* SAC ¶ 71

3    (citing "34 C.F.R. part 100. Section 100.7"), Section 504 of the Rehabilitation Act, the ADA, and

4    the First Amendment pursuant to Section 1983.  Since Hodge herself provides no clarification, and

5    the factual allegations accompanying her third claim all appear to allege retaliation against alleged

6    disability rights advocacy, her claim will be construed as sounding solely under the ADA and the

7    Rehabilitation Act.[11]

8    The anti-retaliation provision of the ADA provides: "[n]o person shall discriminate against

9    any individual because such individual has opposed any act or practice made unlawful by this

10   chapter or because such individual made a charge, testified, assisted, or participated in any manner

11   in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a). *See also* 28

12   C.F.R. §§ 35.124, 36.206, *and* 29 C.F.R. § 1630.12.  Coercion, intimidation, threats, and

13   interference with the exercise of rights under the Act are similarly prohibited.  42 U.S.C. §

14   12203(b).  Section 504(d) of the Rehabilitation Act incorporates the ADA's anti-retaliation

15   provisions.  29 U.S.C. § 794(d) ("standards used to determine whether this section has been violated

16   in a complaint alleging employment discrimination under this section shall be the standards applied

17   under ... the Americans with Disabilities Act of 1990"); *Corrales v. Moreno Valley Unified Sch.*

18   *Dist.*, No. C 08-00040, 2008 WL 4382507, at *2 (C.D. Cal. Aug. 29, 2008).  Regulations issued

19   pursuant to Section 504 further provide that the failure to "meet individual educational needs of

20   handicapped persons" is a violation of the Rehabilitation Act.  34 C.F.R. § 104.33(b)(1).  *See also*

21   34 C.F.R. § 104.33(b)(2) ("[i]mplementation of an Individualized Education Program developed in

22   accordance with the [IDEA Act] is one means of meeting the standard established in paragraph

23   (b)(1)(I) of this section").  As a result, claims of retaliation are analyzed under the two laws by the

24   same standard.  *Douglas v. Cal. Dep't of Youth Auth.,* 285 F.3d 1226, 1229–30 (9th Cir. 2002)

25   (cases interpreting the two laws are "interchangeable").

26

27

28

---

[11] This conclusion is consistent with the Court's prior orders in this case.  The reference to Title VI appears to be simply misplaced.  To the extent Hodge asserts liability under the First Amendment, her third claim is duplicative of her fourth, which is analyzed fully below.

United States District Court

For the Northern District of California

*McDonnell Douglas* again provides the applicable standard for claims of retaliation.  Thus, to prove a *prima facie* case, Hodge must show (1) she engaged in protected activity; (2) she was thereafter subjected to an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action.  *Barnett v U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000) (overruled on other grounds) (applying Title VII framework to ADA retaliation claims). Advocacy on behalf of disabled students on issues related to their civil rights constitutes protected activities.  *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (upholding standing under Section 504 based on persuasive finding by Department of Education Office of Civil Rights that "[a]dvocacy on behalf of disabled students on issues related to their civil rights, and the filing of [Office for Civil Rights] complaints, are protected activities under Section 504 and Title II").  Under the Ninth Circuit's precedent, "adverse employment action" means "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."  *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000) (citing EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998)).  Causation may be inferred based on the temporal proximity between the protected activity and the alleged retaliation.  *Manatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003).  The connection in time must be "very close," however, and an intervening period of more than several months does not support an inference of causation.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In addition, a two-year statute of limitations applies to claims brought under the ADA or Rehabilitation Act.  *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002) (applying California statute of limitations for personal injury); Cal. Code Civ. P. § 335.1 (two years).  Consequently, allegations of retaliation that occurred prior to October 10, 2007 – two years prior to the date this action was initiated – are time-barred.

Defendants systematically attack Hodge's myriad allegations in their motion for summary judgment, and for the most part, Hodge does not address these contentions.  Instead, in her opposition to the motion, she identifies the following adverse employment actions, all of which occurred during the 2008 ESY program: (1) she was forced to "toilet" students; (2) she was not permitted to take her students outside; (3) she was not provided with classroom instructional

United States District Court
For the Northern District of California

materials; (4) she was not permitted to participate in the evaluation of her aids; (5) she had a "runner" in her class, and was required to supervise numerous children at once; and (6) she received an unsatisfactory evaluation. Hodge provides no legal authority whatsoever in support of her position that these constitute adverse employment actions, other than the general principle that the meaning of the term is to be broadly understood. Viewing the evidence in the light most favorable to Hodge, none of these acts qualify as an adverse employment action, with the possible exception of the negative evaluation.

Ultimately, however, it is not necessary to discuss that issue, because Hodge has failed to raise a triable issue regarding causation.[12] Rather than link any specific alleged protected activity to the defendants' supposed acts of retaliation, Hodge simply makes conclusory, general references to the district's alleged "retaliation tactic[s]." *See* Pl.'s Opp'n at 24 ("Defendants [sic] adverse actions against Plaintiff began in 1999 after her first protected activity and continued growing steadily more severe with each new protected activity."). The Court, of course, is under no "duty to search for evidence that would create a factual dispute," or speculate as to the specific theory of events plaintiff believes supports liability. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

That said, a thorough review of the record does not reveal any connection between the conduct Hodge relies upon as protected activity and her turbulent tenure during the 2008 ESY program. As an initial matter, there is no suggestion that any of the individual defendants overseeing her work in 2008 had knowledge of her prior advocacy activities. Moreover, the record reflects that the overwhelming majority of that activity occurred in 1999 to 2002, or 2005 at the latest. *Breeden* does not permit plaintiff to proceed on the premise that she was punished in 2008 for activities that occurred several years earlier, particularly given that there is no evidence linking the events. 532 U.S. at 273. The only reference in Hodge's opposition brief to conduct that might be considered protected, and which occurred within striking distance of the summer of 2008, is her apparent recommendation that "a charter school student be placed in a SDC class" in 2007. Pl.'s Opp'n at 17. As previously noted, however, there is nothing in evidence to support this allegation,

---

[12] Plaintiff's opposition generally points to her declaration as evidence of that performance evaluation, without providing a pincite. Her declaration, however, makes no apparent reference to it. As a result, Hodge has also failed to raise a triable issue as to that allegation.

No. C 09-04719 RS
ORDER

**United States District Court**
For the Northern District of California

1    or even explain what a "SDC class" is.  *See supra* note 6.  Consequently, Hodge has failed to

2    establish a *prima facie* case of retaliation under either the ADA or the Rehabilitation Act, and

3    defendants' motion for summary judgment must be granted on these claims, as well.

4    C. Section 1983

5          Finally, Hodge alleges retaliation in violation of her First Amendment rights, pursuant to 42

6    U.S.C. § 1983.  According to the complaint, her claim is predicated on the allegation that she

7    "periodically notified school administration, district supervisors or parents of deficiencies or [sic]

8    programs, facilities or in students [sic] programs."  SAC ¶ 88.  She also alleges the individual

9    defendants gave her "poor evaluations, told staff that she lacked work ethics and honesty and

10   instructed other staff to observe or spy on Hodge and report back," *id.* ¶ 88, and "attempted to

11   restrain" her speech.  *Id.* at ¶ 91.  A First Amendment retaliation claim by a public employee is

12   evaluated under *Pickering*'s five-step inquiry.  That test requires the Court to determine:

13   > (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff
     > spoke as a private citizen or public employee; (3) whether the plaintiff's protected
14   > speech was a substantial or motivating factor in the adverse employment action; (4)
     > whether the state had an adequate justification for treating the employee differently
15   > from other members of the general public; and (5) whether the state would have taken
     > the adverse employment action even absent the protected speech.
16

17   *Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968); *Clairmont v. Sound*

18   *Mental Health*, 632 F.3d 1091, 1102-03 (9th Cir. 2011).  California's two year statute of limitations

19   for personal injury applies.  *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *DeGrassi v.*

20   *City of Glendora,* 207 F.3d 636, 644 (9th Cir. 2000).

21         Hodge's opposition does not defend, or even mention, her First Amendment claim.  The only

22   speech referenced in connection with her claim in the SAC is her periodic reporting of program

23   "deficiencies" to district employees and parents.  The great majority of this alleged activity is time-

24   barred, as discussed above, because it occurred well before 2007.  Defendants defend on the

25   additional ground that this alleged reporting was undertaken pursuant to Hodge's official duties, and

26   therefore beyond the ambit of First Amendment protection.  *Garcetti v. Ceballos*, 547 U.S. 410, 421

27   (2006) ("public employees who make statements pursuant to their official duties … are not speaking

28   as citizens for First Amendment purposes").  In support of this contention, they point out that

Hodge's stated responsibilities, as a resource specialist, require her "to provide information and assistance to individuals with exceptional needs and their parents; to provide consultation, resource information, and material regarding individuals with exceptional needs to their parents and to regular staff members…." Def.'s Mot. at 23. Although, again, Hodge has neglected to weigh in on this question, it matters not. There is nothing in the record to indicate that Hodge's recent activities were undertaken as a private citizen, and not as a public employee. Accordingly, defendants' motion for summary judgment on her First Amendment claim must be granted.

                                   V. CONCLUSION

        For the reasons stated, defendants' motions for summary judgment must be granted on all of plaintiff's claims. Accordingly, plaintiff's cross motion for summary judgment as to defendants' affirmative defenses is denied as moot.

        IT IS SO ORDERED.


Dated:  5/29/12                         _____
                                        RICHARD SEEBORG
                                        UNITED STATES DISTRICT JUDGE

No. C 09-04719 RS
ORDER

17